Bubket, C. J.
The contention in the pleadings and finding of facts as to whether Mr. Parish brought -and prosecuted the action in good faith, is of no importance, because if he had a legal right which he sought to protect by an action in a court of justice, the motive which induced him to bring the action cannot be inquired into. To sustain his action, if brought in good faith, and defeat it if brought in bad faith, would be to control his morals by means of a law suit. That cannot be done. Unless restrained by statute, a man may direct his moral conduct as he pleases. In State ex rel. v. Board of Education, 35 Ohio St., 368, the following appears on page 382: “If it is apparent that the relator is legally capable of prosecuting this proceeding, and that he has a clear legal right to the remedy he is seeking, we cannot stop to inquire whether he is moving of his own volition, or at the request of some third party.” To the *190 same effect is Lewis v. White, 16 Ohio St., 444; Frazier v. Brown, 12 Ohio St., 294; and Letts v. Kessler, 54 Ohio St., 73. And it can make no difference whether his right is clear or not, only so that it exists.
The fee of the land occupied by highways outside of municipalities is in the owner of the adjoining lands. Railroad Co. v. Williams, 35 Ohio St., 168; Daily v. State, 51 Ohio St., 348; Phifer v. Cox, 21 Ohio St., 248; and Callen v. Electric Light Co., 66 Ohio St., 166.
But in municipalities the fee of the streets is in the city or village, in trust however for street purposes. Section 2601, Revised Statutes; S. & C., 1083; Street Railway v. Cumminsville, 14 Ohio St., 523; City of Columbus v. Agler, 44 Ohio St., 485; and Callen v. Electric Light Co., 66 Ohio St., 166.
The fee being in the municipality in trust for street purposes, the abutting lot owner, in addition to his easement in the street for passage and repassage in common with the general public, has a special easement in the street appendant and appurtenant to his lot for ingress and egress; and when the street becomes vacated the public thereby surrenders, or more properly speaking, legally abandons the public use thereof for travel, but the private or special use or easement, adheres to the abutting lots, and becomes part and parcel of them as by accretion, so as to preserve the right of ingress and egress to the lots over the land that formerly formed the street or part thereof. The reason that a street when vacated, becomes a part of the abutting lots, is not because the owner of the lot owned the fee of the street, but because it must go there by necessity, to preserve his easement of ingress and egress, which in many cases is a valuable property right, and without- which the *191 lots might he of little value. The street being vacated and abandoned, the public no longer owns it, and it must either revert to the original owner, or adhere to the abutting lots as by accretion. As the original owner is presumed to have received full value for the street when he sold the lots, there is no just reason why he should have the street, when vacated, restored tó him. And as the lot owners and those in the line of title have paid an increased price for lots by reason of the easement in the street, it is only just that when the street becomes vacated,, the easement should be preserved to them by adding the vacated street to the lots, and therefore this doctrine of accretion in such cases has been adopted in this state, and generally elsewhere.
While the abutting lot owner has this right of public travel on the street, and the right of ingress and egress from the street to his lots, the public authorities retain the right to improve the street, and place such means of travel thereon as in their judgment shall best conserve the public welfare. And so long as his easement of ingress and egress is not materially injured, he is without remedy, because he is not wronged, said easement — all the property right he has in the street — not being interfered Avith. If, however, his easement of ingress and egress should be materially injured by the building and operation of the street railroad, then he must be first fully compensated for such injury. This in substance is the holding of this court in Street Railroad v. Cumminsville, 14 Ohio St., 523, and subsequent cases on this subject. His easement of ingress and egress being the only property right he has in the street, the city authorities had the power, under the constitution, to construct and operate a street railroad on and along *192 the street without his consent and ¿gainst his will, unless restrained by statute, provided they caused no material interference with his easement of ingress and egress.
The general assembly at an early day foresaw that the public authorities, in the exercise of the power to grant franchises for street railroads with a liability to make compensation only in cases of interference with the property right of ingress and egress, might act oppressively, or against the wishes of the abutting lot owners, and therefore imposed a further check upon that power, and required that the consent in writing of the owners of a majority of the feet front-on the street should be obtained and produced to the proper officer. This was done, as held by this court in Roberts v. Easton, 19 Ohio St., 86: “To protect owners of property on the streets of cities * * * from the exercise of arbitrary power on the part of the city authorities in permitting the streets to be used for street railroads.”
But this additional check did not have the effect to vest the fee of the street in the abutting lot owner, nor to give him a right to compensation unless his easement of ingress and egress should be injured. It therefore gave him no more property rights than he had before the statute as to such consents was enacted.
Such consent is therefore not a property right adhering to the lot, but is a personal right in the owner of the lot, a power or sword in his hands with which to protect his lot against the arbitrary powers of the city authorities. A majority of consents by the feet, front is a condition precedent to jurisdiction to pass a street railway ordinance, and each abutting lot owner is free to aid in conferring such jurisdiction, and free *193 to withhold such aid. His actions cannot be controlled in that regard by others on the street, nor by courts of justice in their behalf. Such a condition, such consent, in the nature of things cannot be appropriated under the power of eminent domain. The consent must be given or withheld at the option of the lot owner. He cannot be forced to give it, nor forced to withhold it. Section 3439, Revised Statutes, provides for this written consent, and it imposes no conditions or restrictions, but leaves the lot owner free to give or withhold his consent. And section 3440 goes further and provides that: “Nothing herein contained shall affect the rights of property owners to give or withhold their consent.” So that our statutes, while granting this power of consent, and providing for the giving or withholding of the same, impose no conditions or limitations on such power, but expressly provide that the statutes shall not affect the rights of property owners to give or withhold such consent. We cannot approve the Illinois cases on this question, but regard the New York and New Jersey cases on the question as stating the correct rule.
As the general assembly while having the subject before it, imposed no conditions or limitations upon the exercise of this power, can this court amend the statute by construction, and add conditions or limitations not imposed by the legislature? We think not. In some other like statutes the general assembly has imposed conditions and limitations, and if it had regarded them necessary in this statute, it Avould have inserted them into the act, as was done in the Two-Mile Pike act, now Section 4.836, Revised Statutes. It is therefore clear that the general assembly did not regard it Avise or necessary to impose *194 conditions or limitations upon the exercise of the-power of consent in such cases.
But it is urged that outside of the statute and independent of it, the purchase of such consents for value is against public policy, and this seems to be the ground upon which the circuit court based its. judgment; because that court found as a conclusion of law that the “consents procured by purchase are invalid, null and void and against public policy.” As they are not shown to be defective in form or substance, and are not prohibited by statute, there can be no reason for holding them “invalid, null and void,” unless they are against public policy. We will therefore address ourselves to the matter of public policy, as the case was argued here upon that ground.
In Probasco v. Raine, 50 Ohio St.. 378, this Court held: “If a statute is constitutional, it is valid, and cannot be set aside by a court, as being against public policy or natural right. There can be no public policy or right in conflict with a constitutional statute.”
In the case at bar the effort is not to invoke public policy to override a valid statute, as was attempted in the Probasco case, but rather to bring forward a public policy to supply a rule of decision as to a statutory matter as to which the general assembly has. been purposely silent.
In Vidal v. Girard, 2 How., 127, a case from Pennsylvania, the Supreme Court of the United States, laid down the rule as to public policy in such cases as follows: “Nor are we at liberty to look at general considerations of the supposed public interests and policy of Pennsylvania upon this subject, beyond what its constitution and laws and judicial decisions make known to us. The question, what is the public *195 policy of a state, and what is contrary to it, if inquired into beyond these limits, will he found to be one of great vagueness and uncertainty, and to invoke discussions which scarcely come within the range of judicial duty and functions, and upon which men may and will complexionally differ. * * * We disclaim any right to enter upon such examinations, beyond what the state constitutions, laws, and decisions necessarily bring before us.”
No decision of this Court is cited, and we know of' none, recognizing or establishing the public policy contended for in this case, and we think it safe to hold that there is none. Under a system like ours, where the fundamental rights of the people are defined and guarded by a written constitution, where all crimes; are statutory, and our civil rights and procedure also? regulated by statutes, there is but little room for public policy, outside of our statutes and constitution. In this regard our system is very different from that of England where the doctrine of public policy in earlier days had a wide scope, and from which it was; brought to this country, and has often been indis- ■ criminately applied by courts here without observing; the distinction between the systems of the two countries.
The Supreme Court of the United States in the.Girard Will Case, supra, states the rule as to public policy correctly, and tested by that rule we find nothing in our constitution, statutes, or decisions, sustain!ing the public policy contended for.
It is urged that to purchase consents for value is a species of bribery, and an expression to that effect in Makemson v. Kauffman, 35 Ohio St., 444, is cited and. relied upon. But upon turning to our bribery statute, we do not find it to cover the case, and as we have *196 . no common law crimes, but all defined by statute, we must conclude that such purchase of consents is not a species of bribery, because under our system what is not prohibited is tolerated. Again title one, chapter 8 of our penal code, from section 6929 to 7017 is devoted to “Offenses Against Public Policy,” and it is only fair to presume that if the general assembly had intended to prohibit the purchase of such consents, it would have done so in this chapter 8, or in the street railroad sections.
It is also urged that the abutting lot owners as to these consents, act in a public capacity, or perform a public function, and that they must therefore act from pure motives for the benefit of the public, or at least for the good of all on the street, and that their action for or against the street railroad cannot be influenced by considerations of gain, and some cases are cited supporting this view. But here again we are asked to amend the statutes by construction, and to create a public policy which is not deducible from our constitution and statutes. This Court cannot control the morals of litigants unless so provided by statute. And when the evil results flowing from a given course of conduct, have not been of a grave . enough character to attract the attention of the gen ■.eral assembly, this Court cannot, by construction, •¿provide a new remedy under the plea of public policy.
The cases cited by counsel on both sides have been fully considered, but their review has not been found necessary in this opinion. The reporter will cite them in his report of the case.
With this view as to such written consents, the questions growing out of section 3439a, 95 Ohio Laws, 475, are immaterial, and are not here decided.
*197 The judgment of the circuit court will he reversed, and judgment entered upon the finding of facts in favor of the plaintiff in error.

Judgment reversed and judgment for plaintiff in error.

Spear, Davis, Shauck, PRiCE*and Crew, JJ., concur.